Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELLEN HEINE, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. 15-8210 (ES) (MAH) |
| v. | : | |
| | : | OPINION |
| DIRECTOR OF CODES AND STANDARDS, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

SALAS, DISTRICT JUDGE

This matter comes before the Court with an extensive history. Twenty-one *pro se* Plaintiffs filed an omnibus Complaint against twelve Defendants alleging violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; parallel claims in violation of the New Jersey Constitution; and violations of constitutional rights established by case law. Many of these Plaintiffs have filed repeated and similar actions against the various Defendants in state and federal court. Each matter is based on the same operative facts and the actions are substantially similar, if not identical, to the claims currently before this Court. Several of those claims have been previously adjudicated and dismissed. But Plaintiffs nevertheless continue to file additional similar claims against the same Defendants.

Defendants, irked at Plaintiffs' repeated filings of the same adjudicated claims, moved to dismiss Plaintiffs' Complaint. (*See* D.E. Nos. 54-58). Having considered the submissions in support of and in opposition to the pending motion, the Court decides this matter without oral

argument.  *See* Fed. R. Civ. P. 78(b).  For the reasons that follow, the Court GRANTS Defendants'

motion and dismisses Plaintiffs' claims *with prejudice*.

## I.    BACKGROUND

### A.  Factual Allegations[1]

**Pro Se** *Plaintiffs.*   Twenty-one individuals appearing *pro se*—namely, Ellen Heine,

Christopher Grieco, Kara Grieco, Keri Burke, Ann Schildknecht, Andrew Tuscano, Richard

Holler, Ruben Williams, Ruthann Hughes, Unita Peri-Okonny, Theodoro Pagan, Thomas Combs,

Solimon Youssef, Paul Dean, Susan Miller, Peter Martens, Frank Bright,[2] Nadeem Shahidi,

Wendell Sellers, Robert Dow, and Joseph Fabics[3] (collectively, "Plaintiffs")—filed an omnibus

Complaint against thirteen named Defendants, alleging violations of the First, Fourth, Fifth,

Eighth, and Fourteenth Amendments; parallel claims in violation of the New Jersey Constitution;

and violations of constitutional rights established by case law.  (*See generally* Compl.).  The events

described in the Complaint took place in New Jersey "as well as across these United States."  (*Id.*

at 3).  To the extent specified, these events occurred in the towns of Garfield, Montclair, New

Brunswick, North Brunswick, South Brunswick, and Highland Park.  (*See generally id.*).

---

[1]     The Court must accept Plaintiffs' factual allegations as true for purposes of resolving the pending motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).  Additional facts are provided elsewhere in this Opinion as relevant to the Court's analysis.

[2]     The Complaint lists Plaintiff Frank Bright in the caption, but elsewhere references both a Frank "Bright" and a Frank "Brite."  (*See* D.E. No. 1, Complaint ("Compl.") at 1-2, 6-7).  The context surrounding these references suggests that they refer to the same person.  So, to avoid the risk of confusion, this Opinion refers only to "Bright."

[3]     The Court has learned of Mr. Fabics's unfortunate passing.  (*See* D.E. No. 54 at 21).  And no attorney or administrator of his estate has made an appearance in this case.  To the extent that the other Plaintiffs continue to pursue any relief on his behalf, they may not do so because "a *pro se* litigant who is not an attorney may not represent someone else in federal court."  *McCain v. Episcopal Hosp.*, 350 F. App'x 602, 604 (3d Cir. 2009) (citing *Osei-Afriyie v. Med. Coll. of Penn.*, 937 F.2d 876, 882 (3d Cir. 1991)); *see also* 28 U.S.C. § 1654 (providing that a party may proceed in federal court "personally or by counsel").  Accordingly, Mr. Fabics's claims are dismissed.

Plaintiffs assert that "[t]here is a question of law that is common to all [P]laintiffs and has its origins in the international ECOSOC Coalition Treaty." (Compl. Count II ¶ 2).[4] But the Court is unable to determine the precise constellation of relationships—aside from either living or owning property in certain New Jersey towns—that brings these Plaintiffs together in the instant Complaint.

The relationships among Plaintiffs that are evident from the Complaint are as follows: (i) Christopher Grieco, Kara Grieco, and Burke were, at one time, Heine's tenants at her property in Garfield (Compl. Count I ¶ 17); (ii) Hughes, Holler, and Tuscano appear to have some financial connection to Heine's Garfield property (*id.* ¶ 5); and (iii) some unspecified Plaintiffs participated in "the New Brunswic[k] Homeowners' Association monthly teleconferencing meeting with members of the UN Habitat delegation" (Compl. Count II ¶ 10).

***Defendants.*** Defendants comprise five New Jersey state agencies and officials,[5] six New Jersey municipalities and their respective agents,[6] and JPMorgan Chase Bank, N.A. ("Chase")[7] (collectively, "Defendants").[8] (Compl. at 1). Except for Chase and DYFS, all other Defendants

---

[4]    The Court is unable locate the specific treaty to which Plaintiffs refer, and it is unclear how the United Nations Economic and Social Council is relevant to the instant matter.

[5]    Specifically, the Commissioner of the Department of Community Affairs ("DCA"), the Director and Bureau Chief of Codes and Standards, the Division of Fire Safety, and the Division of Youth and Family Services of Middlesex and Bergen Counties ("DYFS").

[6]    Specifically, the City of Garfield and its Agents ("Garfield"), the Township of Montclair and its Agents ("Montclair"), the City of New Brunswick and its Agents ("New Brunswick"), the Township of North Brunswick and its Agents ("North Brunswick"), the Township of South Brunswick and its Agents ("South Brunswick"), and Highland Park and its Agents ("Highland Park").

[7]    Chase is the mortgage lender on Heine's and Peri-Okonny's properties and has foreclosed Peri-Okonny's property. (Compl. Count I ¶ 6; Count IV ¶ 4). It is unclear from the Complaint whether Plaintiffs intend to state a cause of action against Chase or whether Chase was included as a defendant for notice purposes.

[8]    The Complaint names agents and officials of state agencies and municipalities in their official capacities. The Court notes, however, that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Estate of Fabics v. City of New Brunswick & its Agents*, 674 F. App'x 206, 211 n.8 (3d Cir. 2016) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

are responsible (in various capacities) for the enforcement of state and municipal fire and building codes (i.e., housing ordinances).  (Compl. Count I ¶¶ 1-4).

*Allegations.*  The bulk of the Complaint describes activities by the municipal Defendants related to the enforcement of fire and other public safety statutes and ordinances.  (*See, e.g.*, Compl. Count VII ¶ 2).  Simply put, Plaintiffs allege that the "[m]unicipalities have passed Ordinances that are unconstitutional or are unconstitutionally enforced."  (Compl. Count IX ¶ 8).

Combs, Heine, Peri-Okonny, Fabics, Dean, Dow, Bright, Sellers, and an unspecified Grieco allege that their single marital status is responsible for their occupancies being erroneously subject to the housing and inspection standards enumerated in the Rooming and Boarding House Act of 1979.  (Compl. Count I ¶ 10).  Fabics, Dean, Willaims, Pagan, Peri-Okonny, Martens, Bright, Miller, and Dow have either had their properties inspected or received notices that their properties are to be inspected pursuant to local New Brunswick ordinances (*id.* ¶ 11); these Plaintiffs believe that the designation of their properties that have resulted in these notices and inspections was improper (Compl. Count VI ¶¶ 4-5).

Events in Garfield, Montclair, and New Brunswick resulted in Heine, Christopher Grieco, Kara Grieco, Burke, Schildknecht and Peri-Okonny having "diminished or zero use" of their properties.  (Compl. Count V ¶ 2).  For example, Heine, Christopher Grieco, Kara Grieco, and Burke lost the use of Heine's Garfield property after Garfield issued an imminent-hazard notice pursuant to New Jersey's Uniform Fire Code.  (Compl. Count I ¶ 17).  At the time the Complaint was filed, these Plaintiffs had not been able to access the property for five years.  (*Id.*).  Montclair, on the other hand, removed Schildknecht's "possessory property rights" while acting under the auspices of New Jersey's Uniform Construction Code and Fire Safety Code.  (*Id.* ¶ 16).  And New

Brunswick demolished Peri-Okonny's house, though the Complaint does not elaborate on the circumstances that led to this action.  (*Id.* ¶ 6).[9]

These principle property issues have also had collateral effects on several of the Plaintiffs. Fabics, Pagan, Martens, and Miller have collectively received "several hundred" summonses from New Brunswick for failure to register their dwellings pursuant to Ordinance 5.80.040.  (Compl. Count VI ¶ 2).  Combs received a summons from North Brunswick for violating Ordinance 197-7 and remains anxious from that experience.  (Compl. Count VII ¶ 6).  Schildknecht received an unspecified number of "summonses" from Montclair for failing to register her home as vacant while recuperating from "medical issues."  (Compl. Count V ¶ 6).  Heine has had difficulty resolving her property issues because of complications relating to Garfield's zoning of her property; she has been advised by the town to apply for a variance.  (Compl. Count VIII ¶¶ 5-6). And Holler had an altercation with local police when he attempted to access Heine's property. (Compl. Count I ¶ 8).

Finally, several Plaintiffs have had dealings with DYFS, which appear to have occurred around the same time as the events described above.  Prior to the fire that destroyed his home, Shahidi, for example, was involved in family court proceedings with DYFS after a neighbor saw his children playing with matches.  (*Id.* ¶ 9).  DYFS was also involved in the supervision of the Grieco family while they were tenants in Heine's Garfield home.   (Compl. Count III ¶ 2). Following the closure of Heine's property, DYFS did not provide the Grieco family with "alternate housing or relief."  (*Id.* ¶ 4).

---

[9]     The Court also takes note of the fact that Shahidi lost the use of his home following a fire, but this loss of property rights seems unrelated to the state action that resulted in the other Plaintiffs' property woes.  (*Id.* ¶ 9).

## B.  Prior Similar Actions

Many of the Plaintiffs have filed similar actions against a number of Defendants in state and federal court.  As background, below are summaries of prior decisions in three of those actions.  Though there are numerous other decisions that are also relevant here, the Court provides summaries of only those central to its analysis.

### i.  *Schildknecht v. Twp. of Montclair, No. 13-7228 (the "7228 Action")*

On November 29, 2013, Schildknecht and Heine filed a complaint against Montclair and the DCA seeking damages and injunctive relief.  *Schildknecht v. Twp. of Montclair*, No. 13-7228, 2014 WL 835790, at *1 (D.N.J. Mar. 4, 2014).  They alleged that defendants (i) violated their "procedural due process rights by removing Schildknecht from her home and preventing Heine from entering Schildknecht's home"; and (ii) discriminated against them in violation of the Fair Housing Act and 42 U.S.C. § 1983.  *Id.*

The court denied the plaintiffs' request for a preliminary injunction because they "did not show a likelihood of success on the merits—indeed, [Montclair's] filings showed that Schildknecht's deplorable and dangerous living conditions necessitated emergency intervention by the police, the fire department, and animal control."  *Id.*  The court then granted Montclair's motion to dismiss, finding that (i) the plaintiffs failed to allege any specific Montclair policy, regulation, or decision that resulted in any constitutional violation, nor did they allege that Montclair inadequately trained its employees; (ii) the plaintiffs' discrimination and due-process claims were bare legal assertions without sufficient factual basis; and (iii) the plaintiffs did not allege discrimination related to the sale or rental of a house, and therefore, had not pled a violation of the Fair Housing Act.  *Id.* at *2-3.

### ii. *Fabics v. City of New Brunswick, No. 13-6025 (the "6025 Action")*

In this action, Fabics, Dean, Williams, Peri-Okkony, Heine, Dow, Combs, Pagan, Miller, and Martens sought redress against New Brunswick, Garfield, North Brunswick, and the DCA for "unlawful/unauthorized, 'administrative searches' . . . purportedly in conjunction with the enforcement of certain municipal health and safety codes, as well as through municipal rent control laws." *Fabics v. City of New Brunswick*, No. 13-6025, 2015 WL 5167153, at *1 (D.N.J. Sept. 3, 2015).

On November 13, 2014, the Honorable Joel A. Pisano, U.S.D.J., dismissed the complaint without prejudice for failing to meet Rule 8's plausibility standard. *Id.* at *2. Judge Pisano gave plaintiffs thirty days to file an amended complaint and advised them that "[a]ny [p]laintiffs who are not properly joined under Rule 20 must refile separate, individual actions against the proper [d]efendant(s)." *Id.* at *3.

Plaintiffs moved for reconsideration and sought leave to amend their complaint. Both requests were denied. *Id.* at *1. The Honorable Anne E. Thompson, U.S.D.J., to whom the case was reassigned, denied the motion to amend on several grounds: (i) plaintiffs had failed to file their amended complaint within the thirty days specified by Judge Pisano; (ii) the amended complaint also failed to meet the pleading standards of Rule 8; (iii) amendment would be futile because the complaint was deficient and plaintiffs failed to demonstrate proper Article III standing; and (iv) the complaint had failed to fix the Rule 20 joinder issues that Judge Pisano had previously identified. *Id.* at *6-8. Moreover, the court cautioned plaintiffs that any future action "must abide by Rule 20" and explicitly discouraged Plaintiffs from filing similar "omnibus actions" in the future. *Id.* at *8.

Plaintiffs appealed Judge Thompson's ruling and the Third Circuit affirmed, finding that Judge Thompson did not abuse her discretion in either her denial of plaintiffs' motion for reconsideration or her failure to grant plaintiffs leave to amend. *See Estate of Fabics v. City of New Brunswick*, 674 F. App'x 206, 210-11 (3d Cir. 2016) (per curiam).

### iii.   *Fabics v. City of New Brunswick, No. 14-2202 (the "2202 Action")*

The 2202 Action is deeply connected to the 6025 Action. The parties involved in both actions are substantially the same, though the 2202 Action adds Plaintiffs Youssef, Hoff, Shahidi, Schildknecht, Sellers and Bright, and Defendant Montclair. *See Fabics v. City of New Brunswick*, No. 14-2202, 2015 WL 10936119 (D.N.J. Jan. 14, 2015).

The complaint in the 2202 Action (like the 6025 Action) also alleged constitutional violations related to "unlawful/unauthorized 'administrative searches' of [plaintiffs'] residences, purportedly in conjunction with the enforcement of municipal health and safety codes, as well as through municipal rent control laws." *Id.* at *1.

On November 13, 2014, the Honorable Peter G. Sheridan, U.S.D.J., dismissed the 2202 Action with prejudice as duplicative of the 6025 Action. *Fabics v. City of New Brunswick*, No. 14-2202, 2014 WL 11394518, at *1 (D.N.J. Nov. 13, 2014). In denying the plaintiffs' reconsideration motion, Judge Sheridan (i) noted that "Judge Pisano agreed with [d]efendants' contention that [p]laintiffs had filed the [2202 Action] in an attempt to circumvent the orders of the Court issued in the [6025 Action]"; and (ii) warned plaintiffs that they "are not free to avoid, willy-nilly and at their own choosing, either the procedural requirements of the Federal and Local Rules or the orders of this Court." *Fabics*, 2015 WL 10936119, at *1-2.

Plaintiffs' appealed both Judge Sheridan's dismissal of their complaint and his denial of their motion for reconsideration. The Third Circuit affirmed on both counts. *See Fabics v. New*

*Brunswick*, 629 F. App'x 196, 198-99 (3d Cir. 2015) (per curiam).  As to dismissing the complaint with prejudice, the Third Circuit noted that on the same day Judge Sheridan dismissed the duplicative 2202 Action with prejudice, Judge Pisano granted the plaintiffs leave to amend in the 6025 Action.  *See id.* at 199 ("Thus, to the extent that any of the new parties or new claims mentioned in this complaint properly could be brought in one complaint under the Federal Rules of Civil Procedure, Plaintiffs had the opportunity to propose such changes through a motion to amend the complaint in the 6025 action.").

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."[10]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Neither a claimant's "blanket assertion[s]" of a right to relief nor "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" satisfy Rule 8(a)(2)'s requirements.  *Twombly*, 550 U.S. at 556 n.3; *Iqbal*, 556 U.S. at 678.

Rule 8(a)(2)'s pleading standard also requires that a complaint set forth the plaintiff's claims with enough specificity as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 570.  The complaint must contain "sufficient facts to put the proper defendants on notice so they can frame an answer" to the

---

[10]     Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

plaintiff's allegations. *Dist. Council 47, Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO by Cronin v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986); *see also Pushkin v. Nussbaum*, No. 12-0324, 2013 WL 1792501, at *4 (D.N.J. Apr. 25, 2013) ("[T]he Court cannot expect the Defendants to defend against claims that are not clearly and specifically alleged.").

In assessing a Federal Rule of Civil Procedure 12(b)(6) motion, "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But a reviewing court does not accept as true the complaint's legal conclusions. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions."). A court therefore must first separate a complaint's facts from its legal conclusions and then assess whether those facts raise a plausible claim for relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211-12 (3d Cir. 2009).

Relevant here, the Court notes that "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Yet there are limits to our procedural flexibility" when it comes to *pro se* litigants. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). *Pro se* litigants are not relieved of the obligation to plead enough factual matter to meet Rule 8(a)(2)'s plausibility standard. *See Franklin v. GMAC Mortg.*, 523 F. App'x 172, 172-73 (3d Cir. 2013). A litigant's *pro se* status likewise does not relieve him or her of the obligation to "clearly and specifically" identify which claims pertain to which defendants. *Pushkin*, 2013 WL 1792501, at *4.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic

documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

## III.   DISCUSSION

### A.  The Parties' Joint Arguments

Defendants filed a joint motion to dismiss, followed by supplemental individual moving and reply submissions addressing arguments relevant to each of them.[11]  In their joint submission, Defendants argue that the Complaint should be dismissed because, among other things, Plaintiffs (i) lack standing to assert generalized grievances; (ii) assert claims against municipalities in which they do not reside, which again violates standing principles; (iii) are impermissibly joined in violation of Rule 20; (iv) assert duplicative claims and are attempting to circumvent court rules

---

[11]        For ease of reference, the Court refers to (i) D.E. No. 54, Omnibus Brief on Behalf of Defendants City of New Brunswick, Township of Montclair, Commissioner of the Department of Community Affairs, Director of Codes and Standards, Bureau Chief of Division of Fire Safety, and JPMorgan Chase Bank, N.A. In Support of Motion to Dismiss Plaintiffs' Complaint as **"Defs. Mov. Br."**; (ii) D.E. No. 55, Supplemental Brief on Behalf of Defendant City of New Brunswick, as **"NB Mov. Br."**; (iii) D.E. No. 70, City of New Brunswick's January 17, 2017 Letter Brief, as **"NB Ltr. Br."**; (iv) D.E. No. 56; Supplemental Brief of Defendant, JPMorgan Chase Bank, N.A., In Support of Defendants' Motion to Dismiss the Complaint, as **"Chase Mov. Br."**; (v) D.E. No. 57, Supplemental Brief on Behalf of Defendant Township of Montclair in Support of Motion to Dismiss Plaintiffs' Complaint, as **"Montclair Mov. Br."**; (vi) D.E. No. 58, Supplemental Brief on Behalf of Director of Codes and Standards and Bureau Chief, Division of Fire Safety and the Commissioner of the Department of Community Affairs in Support of the Motion to Dismiss Complaint, Pursuant to Federal Rule of Civil Procedure 12(b)(6), as **"DCA Mov. Br."**; (vii) D.E. No. 61, Objection to Defendants' Motion to Dismiss the Plaintiff[s'] Complaint and Reply to the Defendant[s'] Omnibus Brief, as **"Pls. Opp. Br."**; (viii) D.E. No. 62, Defendants' Omnibus Reply Letter Brief, as **"Defs. Reply Br."**; (ix) D.E. No. 63, City of New Brunswick's Supplemental Reply Letter Brief, as **"NB Reply Br."**; (x) D.E. No. 64, Township of Montclair's Supplemental Reply Letter Brief, as **"Montclair Reply Br."** (xi) D.E. No. 65, Director of Codes and Standards and Bureau Chief, Division of Fire Safety and the Commissioner of the Department of Community Affairs Supplemental Reply Letter Brief, as **"DCA Reply Br."**; and (xii) D.E. No. 66, Supplemental Brief of Defendant, JPMorgan Chase Bank, N.A., in Support of Defendants' Motion to Dismiss the Complaint, as **"Chase Reply Br."**

and prior orders; (v) assert claims barred by res judicata; and (vi) failed to comply with the time requirements of Federal Rule of Civil Procedure 4(m).  (*See* Defs. Mov. Br.).

Mirroring the Complaint, Plaintiffs' opposition lists many of the same allegations and further states that "[i]njunctive relief is needed against the enforcements of the municipalities that are not compliant with the guidance of case law or the Constitutional rights of residents."  (Pls. Opp. Br. at 8).  They also counter that their claims have not been adjudicated because Defendants' unconstitutional actions are continuing and thus their claims continue to accrue.  (*Id.* at 3).

### B.  Defendants' Res Judicata Arguments

Defendants New Brunswick, Montclair, and the DCA aver that Plaintiffs' Complaint is barred against them by the doctrine of res judicata.  The Court will provide an overview of the doctrine and analyze each Defendant's argument in turn.

### i.  *Res Judicata*

Res judicata, also known as claim preclusion, bars "repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011).  It is a rule founded on the general public policy that once a court has decided on a contested issue, the litigation may not later be renewed in another court.  *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946); *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985).

Res judicata is an affirmative defense, and the party asserting the defense has the burden of proving that it applies to the situation at hand.  Fed. R. Civ. P 8(c); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-84 (3d Cir. 1984); *Davis v. U.S. Steel Supply*, 688 F.2d 166, 170 (3d Cir. 1982).  The res judicata defense "may be raised and adjudicated on a motion to dismiss

and the court can take notice of all facts necessary for the decision." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).

To successfully raise the defense of res judicata, the party asserting the defense must show that there has been (i) a final judgment on the merits in a prior suit involving (ii) the same parties or their privies and (iii) a subsequent suit based on the same causes of action. *Athlone*, 746 F.2d at 983. The term "cause of action" does not necessarily rest on the specific legal theory invoked, but turns on the essential similarity of the underlying events giving rise to the various legal claims. *Davis*, 688 F.2d at 171.

An analysis of the essential similarity of underlying events will determine if two suits involve the same cause of action. *Athlone*, 746 F.2d at 984. Courts should consider whether the (i) acts complained of and the demand for relief are the same (that is, whether the wrong seeking to be redressed is the same in both actions); (ii) theory of recovery is the same; (iii) witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary for the second suit would have been sufficient to support the first); and (iv) material facts alleged are the same. *Id.*

### ii.  New Brunswick

Only Fabics, Peri-Okonny, Pagan, Combs, Dean, Miller, Martens, Bright, Williams, and Dow assert claims against New Brunswick. As best as the Court can decipher, these Plaintiffs appear to assert that their rights have been violated through unlawful inspections and enforcement of certain municipal health and safety codes. All of these Plaintiffs—except for Williams[12]—have

---

[12]    The Court finds that Williams' claims must be dismissed for failure to comply with Rule 8's pleading requirements. Rule 8(a)(2) requires that a complaint set forth the plaintiff's claims with enough specificity as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 570. Moreover, the complaint must contain "sufficient facts to put the proper defendants on notice so they can frame an answer" to the plaintiff's allegations. *Bradley*, 795 F.2d at 315. The Complaint here mentions Williams only once, stating that Williams is "affected" by New Brunswick's "enforcement of municipal ordinances that are unconstitutional with reference to the fourth amendment." (Compl. Count I ¶ 11). Williams alleges no other facts for

filed other complaints raising substantially similar (if not identical) allegations against this Defendant. *See generally Fabics*, 629 F. App'x 196; *Estate of Fabics*, 674 F. App'x 206.

In addition to the arguments advanced in Defendants' joint brief, New Brunswick argues that Plaintiffs' claims are barred by the doctrine of res judicata. (NB Ltr. Br. at 2-6). The Court agrees.

***The Prior Suits Involved the Same Parties*.** Two prior suits are relevant to New Brunswick's res judicata analysis: the 6025 Action and the 2202 Action. Nine of the ten Plaintiffs currently alleging claims against New Brunswick were also parties in those suits, in which New Brunswick was also named as a defendant. Fabics, Peri-Okonny, Pagan, Combs, Dean, Miller, Martens, and Dow were parties in the 6025 Action. *Estate of Fabics*, 674 F. App'x at 210. Those Plaintiffs together with Bright were also parties in the 2202 Action. *Fabics*, 629 F. App'x at 199. The Court acknowledges that additional Plaintiffs have been added to this case. But other than Williams, no other new Plaintiff asserts claims against New Brunswick. Accordingly, for res judicata purposes, the Court finds that the present action involves the same parties with regard to New Brunswick.

***The Prior Suits Comprised Final Judgments on the Merits.*** For purposes of res judicata, "[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981); s*ee also Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3rd Cir. 2007) ("Dismissal for failure to state a claim is a final judgment on the merits for res judicata purposes."). Moreover, dismissals "with prejudice" bar plaintiffs from refiling their claims in the court that dismissed them. *See*

---

this Court to accept as true and draw a reasonable inference that New Brunswick (or any other Defendant) is liable for the misconduct he alleges. The Court cannot expect Defendants to defend against claims that are not clearly and specifically alleged. Accordingly, Defendants' motion is granted as to Williams's claims.

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001); *Mitchell v. Bannum Place of Wash., D.C., Inc.*, 532 F. Supp. 2d 104, 107 (D.D.C. 2008) (noting that a dismissal "with prejudice . . . operates as an adjudication on the merits, unless the district court's order states otherwise").[13]

Here, in the 6025 Action, the district court dismissed Plaintiffs' complaint under Rule 12(b)(6), and the Third Circuit affirmed the district court's dismissal.  *Estate of Fabics*, 674 F. App'x at 210.  The 2202 Action, too, was dismissed with prejudice, which is an adjudication on the merits.  *Fabics*, 629 F. App'x at 199.  Accordingly, these decisions dismissing both prior actions against New Brunswick comprise final judgments on the merits for res judicata purposes.

***The Present Suit is Based on the Same Causes of Action.***  An analysis of the essential similarity of underlying events suggests that the two prior suits involve the same causes of action as the instant Complaint.  *See Athlone*, 746 F.2d at 984.  After examining the present Complaint in light of the adjudicated 6025 and 2202 Actions, the Court sees no material facts that differentiate the controversy before this Court from those already adjudicated in the 6025 and 2202 Actions.  A great portion of Plaintiffs' instant Complaint—including the acts complained of and demand for relief—is a verbatim recitation of the complaints in those cases.  To illustrate, five of the nine counts in the instant Complaint appear either identically or almost identically in the complaints of both prior actions.  (*See* Compl. Count I ¶¶ 5, 8, 10-21; Count II ¶¶ 3-10; Count VI ¶¶ 2-10; Count VII ¶¶ 1-7; Count IX ¶¶ 2-8).  Further, the theory of recovery in the three actions is the same, as is

---

[13]     Federal Rule of Civil Procedure 41(b) addresses involuntary dismissals, stating, in relevant part, that "a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication on the merits." "Rule 41(b) dismissals are considered adjudications on the merits for res judicata purposes because the rule applies in situations . . . 'in which the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the Court's reaching them.'" *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 770 F. Supp. 441, 444 (N.D. Ill. 1991) (quoting *Costello v. United States*, 365 U.S. 265, 286 (1961)).

the evidence necessary to support each suit.  *See Athlone*, 746 F.2d at 984.  Hence, the present Complaint presents the same causes of action against New Brunswick as previously litigated in this District and the Third Circuit.

For these reasons, the Court finds that there are final judgments on the merits in prior suits involving the same parties as the current action.  Accordingly, the doctrine of res judicata bars the Complaint as to Defendant New Brunswick.  Because no other Plaintiffs assert allegations against New Brunswick, the Complaint is dismissed as to New Brunswick in its entirety.

### iii.  *Montclair*

Only Schildknecht asserts allegations against Montclair in the Complaint.  (Compl. Count I ¶¶ 5- 7, 16; Count IV ¶; Count V ¶ 6).[14]  In addition to the arguments advanced in Defendants' joint brief, Montclair argues that Plaintiffs' claims are barred by the doctrine of res judicata. (Montclair Mov. Br. at 10-22; Montclair Reply Br. at 1-5).  The Court agrees.

***The Prior Suits Involved the Same Parties***.  Schildknecht was a party in the 2202 Action, in which Montclair was a defendant.  *Fabics*, 629 F. App'x at 199.  To the extent Heine asserts any allegations against Montclair in the instant Complaint, the Court notes that Heine was also a party to that action.  *Id.*  Moreover, Schildknecht and Heine were also parties in another action in

---

[14]    In their opposition brief, Plaintiffs state that Montclair evicted Schildknecht from her home and that Heine and Holler also "were harmed by the closure because of money loaned to Schildknecht for taxes on the property." (Pls. Opp. Br. at 4).  Heine further states that she was arrested for trespass on that property despite having permission from Schildknecht to enter the premises.  (*Id.* at 3, 8, 13).  It is unclear from Plaintiffs' opposition whether Heine and Holler also intend to assert claims against Montclair.

The Court notes, however, that Plaintiffs may not amend their Complaint by way of an opposition brief.  *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."); *see also Rosado v. Mueller*, No. 15-3999, 2016 WL 4435672, at *4 (D.N.J. Aug. 17, 2016) (noting same and dismissing *pro se* plaintiff's complaint).

Holler asserts no allegations against Montclair in the Complaint.  (*See generally* Compl.).  Even if the Court were to consider Holler's allegations against Montclair advanced in Plaintiffs' opposition, his allegations must nevertheless be dismissed because he fails to meet the pleading standard of Rule 8(a)(2).  Although the *pro se* submissions here are held to less stringent standards, *see Erickson*, 511 U.S. at 94, Holler is not relieved of his obligation to plead enough factual matter to meet Rule 8(a)(2)'s plausibility standard, *see Franklin*, 523 F. App'x at 172-73.  So, to the extent that Holler asserts any allegations against Montclair, those allegations are dismissed.

this District where Montclair was the sole defendant.  *See Schildknecht*, 2014 WL 835790, at *1; *Schildknecht v. Twp. of Montclair*, No. 13-7228, 2014 WL 1577664, at *2 (D.N.J. Apr. 21, 2014). And while other new Plaintiffs have been added to this case, none of them assert allegations against Montclair.  Accordingly, for res judicata purposes, the Court finds that the present action involves the same parties as multiple prior actions with regard to Montclair.

**The Prior Suits Comprised Final Judgments on the Merits.**  As discussed above, the resolution of the 2202 Action comprised a final judgment on the merits.  The other suit in which these parties were involved—the 7228 Action—also comprises a final judgment on the merits because the district court dismissed Plaintiffs' complaint for failure to state a claim and denied a reconsideration motion.[15]  *See Post*, 501 F.3d at 169; *Schildknecht*, 2014 WL 835790, at *1 (dismissing Schildknecht's and Heine's complaint for failure to state a claim); *Schildknecht*, 2014 WL 1577664, at *2 (denying Schildknecht's and Heine's motion for reconsideration).

**The Present Suit is Based on the Same Causes of Action.**  After examining the present Complaint, the Court sees no material facts that differentiate the controversy before this Court from those already adjudicated in the two prior actions discussed immediately above.  As was true for Defendant New Brunswick, the parts of the Complaint pertinent to Montclair are verbatim or near verbatim recitations of language used by Plaintiffs in both actions.  (*See, e.g.*, Compl. Count I ¶¶ 5, 16).  In both prior actions, the acts complained of and the demand for relief are the same; the theory of recovery is the same; and the witnesses and documents necessary at trial would be the same across the three suits.  The present Complaint therefore presents the same causes of action against Montclair as previously litigated in this District and the Third Circuit.

---

[15]     The Court notes that Plaintiffs did not file an appeal and their time for doing so has expired.

For these reasons, the Court finds that there are final judgments on the merits in two prior suits involving the same parties as the current action. Accordingly, the doctrine of res judicata bars the instant Complaint against Montclair. Because no other Plaintiffs assert allegations against this Defendant, the Complaint is dismissed as to Montclair in its entirety.[16]

### iv.   DCA[17]

Thirteen Plaintiffs—Heine, Christopher Grieco, Kara Grieco, Burke, Schildknecht, Fabics, Peri-Okonny, Combs, Dean, Bright, Shahidi, Sellers, and Dow—assert allegations against the DCA.[18] The precise nature of the liability that Plaintiffs seek to ascribe to the DCA is indeterminate. As described in greater detail above, the DCA is involved in the events described in the Complaint in two ways. *First*, the DCA administers the Rooming and Boarding House Act of 1979 and the Uniform Construction and Fire Safety Codes, *see* N.J.S.A. 55:13B-2, N.J.S.A. 52:27D-25d, N.J.A.C. 5:23-1.2, which Plaintiffs believe were misapplied in various municipal enforcement actions. (Compl. Count I ¶¶ 10, 16).[19] As far as this Court can tell, Plaintiffs do not allege that the DCA was involved in these enforcement actions directly. *Second*, Plaintiffs Heine

---

[16]     In its supplemental moving brief, Montclair notes Plaintiffs' repeated violations of court rules and previous court orders and requests that the Court impose sanctions pursuant to Federal Rule of Civil Procedure 11. (Montclair Mov. Br. at 14-15). But Montclair failed to comply with the procedural requirements of Rule 11(c)(2), which instructs that a sanctions motion be "made separately from any other motion, and that it be served but not filed or . . . presented to the court if the challenged [action] is withdrawn or appropriately corrected within 21 days after service." *Metro. Life Ins. Co. v. Kalenevitch*, 502 F. App'x 123, 124 (3d Cir. 2012) (citing Fed. R. Civ. P. 11(c)(2)). Accordingly, Montclair's motion for sanctions is denied. *See id.* at 126 (denying motion for sanctions for failure to comply with Rule 11(c)(2)'s procedural requirements); *Travelers Indem. Co. v. Ward*, No. 01-0078, 2002 WL 31111834, at *5 (E.D. Pa. Sept. 20, 2002) (same).

[17]     As the DCA notes in its brief (DCA Mov. Br. at 1), the Division of Codes and Standards and the Division of Fire Safety both exist under the auspices of the DCA. *See* N.J.S.A. 52:27D-489r; N.J.S.A. 52:27D-25b. This being the case, the Court addresses claims against these Defendants collectively as running against the DCA.

[18]     In Count Seven of the Complaint, "Plaintiff and Co-Plaintiffs" ask this Court to issue sanctions "against the New Jersey Municipalities [sic] and the [DCA] for non-observance of the protections of the Fourth Amendment." (Compl. Count VII ¶ 4). This Court will only entertain the claims of those Plaintiffs who have alleged specific harms from the DCA's conduct, not such sweeping generalities.

[19]     In its administration of these statutes, the DCA delegates authority to municipalities to carry out enforcement actions. (*See id.* ¶ 4; DCA Mov. Br. at 3).

and Schildknecht were denied hearings before Administrative Law Judges to challenge these municipal enforcement actions.  (Compl. Count I ¶¶ 16-17).

Plaintiffs advance two arguments for why the DCA is liable in the present case: (i) the DCA's oversight of the towns to which they have delegated authority is inadequate and has resulted in Plaintiffs' loss of property rights (*id.* ¶¶ 18-19);[20] and (ii) that the DCA, as a general matter, flouts established constitutional protections when the DCA itself promulgates regulations relating to and enforces the Rooming and Boarding House Act of 1979, the Uniform Construction Code, and the Uniform Fire Code (*id.* ¶ 15; Compl. Count VII ¶¶ 2-4).

In addition to Defendants' joint arguments, the DCA asserts two specific grounds warranting dismissal of Plaintiffs' claims.[21]  *First*, it argues that the Plaintiffs' Complaint fails to establish a factual basis for their allegations against it.  (DCA Mov. Br. at 8-9).  *Second*, it argues that the Plaintiffs' claims are barred by res judicata (and the *Rooker-Feldman* doctrine to the extent that any claims against the DCA have been adjudicated in New Jersey state court).  (*Id.* at 11-13; DCA Reply Br. 1-3).

The Court finds that the DCA has successfully raised the defense of res judicata with respect to all Plaintiffs who have asserted claims against the DCA. Although the Court has

[20]     Although the Court ultimately dismisses all counts against the DCA on alternate grounds, it notes that § 1983 requires a plaintiff to establish that the alleged deprivation of rights resulted from a local government's official policy or custom; theories of vicarious liability (such as those Plaintiffs' allege) cannot be used to establish liability for a state or agency properly considered the arm of the state in a § 1983 claim.  *See Olivieri v. Cty. of Bucks*, 502 F. App'x 184, 189 (3d Cir. 2012) ("A local government, however, cannot be held liable under § 1983 on a theory of respondeat superior."); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("[U]nder § 1983, local governments are responsible only 'for their *own* illegal acts.'") (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

[21]     Additionally, the DCA argues that Plaintiffs' claims against it are barred by Eleventh-Amendment immunities because (i) the DCA serves as an arm of the state; (ii) states and their agents are not persons within the meaning of 42 U.S.C. § 1983; and (iii) the relief Plaintiffs seek does not fall within the exception to Eleventh-Amendment immunity established in *Ex Parte Young*.  (DCA Mov. Br. at 5-8).  Because the Court grants Defendants' motion on other grounds, it need not address whether Plaintiffs' request for "declarative relief . . . to establish future practices and enforcement policies" (Compl. at 9) falls within the *Ex Parte Young* exception to state immunity.

identified several prior and ongoing similar actions in state and federal courts involving these Plaintiffs and the DCA,[22] the 6025 and 2202 Actions are most pertinent to this Court's analysis.

   ***The Prior Suits Involved the Same Parties***.  Ten of the thirteen Plaintiffs who raise claims against the DCA were parties in prior actions in which the DCA was a defendant.  Heine, Fabics, Peri-Okonny, Combs, Dow, and Dean were parties in the 6025 Action.  *Estate of Fabics*, 674 F. App'x at 206.  These Plaintiffs together with Schildknecht, Shahidi, Sellers, and Bright were also parties in the 2202 Action.  *Fabics*, 629 Fed. App'x at 196.  The only Plaintiffs who assert distinct claims against the DCA but were not involved in either the 6025 or 2202 Actions are Christopher Grieco, Kara Grieco, and Burke.[23]  Though the present Complaint has added other Plaintiffs in addition to these three individuals, none of them assert claims against the DCA.  Accordingly, the Court finds that, for the purposes of res judicata, the present action involves the same parties with regard to the DCA.

---

[22]      *See, e.g.*, *Heine v. Dep't of Cmty. Affairs*, No. 11-5347, 2014 WL 4199203 (D.N.J. Aug. 22, 2014); *Schildknecht*, 2014 WL 835790; *Heine v. Dep't of Cmty. Affairs*, No. A-2113-11T1, 2013 WL 1759919 (N.J. Super. Ct. App. Div. Apr. 25, 2013).

[23]      Christopher Grieco's, Kara Grieco's, and Burke's claims against the DCA must be dismissed because they fail to meet the requirements of Rule 8.  The Complaint here mentions Christopher Grieco, Kara Grieco, and Burke only twice in connection with the DCA.  (*See* Compl. Count I ¶¶ 10, 17).  In the first instance, the Complaint alleges that an unspecified "Greico" (along with several other Plaintiffs) "experienced negativity in housing due to single status" as a result of the DCA's "as well as local municiplaties[']" incorrect designation of their residencies as "rooming house[s]."  (*Id.* ¶ 10).  In another instance, the Complaint states that "Grieco and Burke" (again, an unspecified Greico), former tenants of Heine in Garfield, "are waiting to reoccupy the property," which Garfield "closed" because of an alleged erroneous issuance of an Imminent Hazard Notice pursuant to New Jersey's Fire Safety Code.  (*Id.* ¶ 17).  These allegations, however, do not even come close to meeting Rule 8(a)(2)'s pleading standard, which requires that a complaint set forth the plaintiff's claims with enough specificity as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 570.  And "the Court cannot expect the Defendants to defend against claims that are not clearly and specifically alleged."  *Pushkin*, 2013 WL 1792501, at *4.  Consequently, Christopher Grieco's, Kara Grieco's, and Burke's claims against the DCA must be dismissed.

         Further, the Court notes that these claims may also be dismissed for the independent reason that nothing in the Complaint, apart from its bare conclusory statements, suggests that the constitutional deprivations these Plaintiffs allege resulted from an official policy or custom.  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978) (noting that a § 1983 claim against a government body requires the plaintiff to show a government's official policy or accepted custom was responsible for the plaintiff's constitutional harms).

***The Prior Suits Comprised Final Judgments on the Merits.***  As discussed above, the resolutions of the 6025 and 2202 Actions comprised final judgments on the merits.

***The Present Suit is Based on the Same Causes of Action.***  After examining the present Complaint in light of the adjudicated 6025 and 2202 Actions, the Court sees no material facts that differentiate the controversy before this Court from those already adjudicated in the 6025 and 2202 Actions.  As was true for Defendant New Brunswick, the parts of the Complaint pertinent to the DCA are verbatim or near verbatim recitations of Plaintiffs' allegations in the 6025 and 2202 Actions.  (*See* Compl. Count I ¶¶ 10, 15-20; Count VII ¶¶ 2-4).  Granted, this Court's concern is not linguistic similarity but whether the current case is an attempt to bring the same cause of action from the 6025 and 2202 Actions before this Court.  *See Athlone*, 746 F.2d at 984 ("[T]he focal points of our analysis are whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same.").  Such wholesale repetition of the two prior actions, however, shows that Plaintiffs have neither altered the factual basis for their Complaint nor identified any additional conduct by the DCA that would compel this Court to regard their current Complaint as a cause of action separate from those already adjudicated in the 6025 and 2202 Actions.

Adding Christopher Grieco, Kara Grieco, and Burke to assert claims against the DCA in the Complaint's current iteration does not alter this Court's determination that res judicata bars participants in the 6025 and 2202 Actions from relitigating their claims.  "Addition of new parties, whether they are plaintiffs or defendants, does not negate the res judicata effect of the prior litigation." *Sheridan v. NGK Metals Corp.*, No. 06-5510, 2008 WL 2156718, at * 11 (E.D. Pa. May 22, 2008).

For these reasons, the Court finds that there are final judgements on the merits in prior suits involving Heine, Schildknecht, Fabics, Peri-Okonny, Combs, Dean, Bright, Shahidi, Sellers, and Dow, and the DCA.  The causes of action asserted in the current suit are the same as those in the prior suits.  Accordingly, these Plaintiffs are barred by res judicata from bringing this action against the DCA.  As noted, Christopher Grieco's, Kara Grieco's and Burke's allegations against the DCA fail to meet Rule 8's pleading standard and must be dismissed.  Because no other Plaintiffs assert allegations against the DCA, the Complaint against it is dismissed in its entirety.

### C.  Chase

Chase is only mentioned in the below two paragraphs of the Complaint:

> 6.  Heine, Peri-Okonny, and Schildknecht all continue to be billed for taxes on both the home and the land even though they are not allowed to use them.  Peri-Okonny's home was demolished by the City of New Brunswick and she has a Final Judgment of Foreclosure from JPMorgan Chase Bank N.A. in the amount of $400,000 which includes several years of tax payments for the building even after the City demolished it.  Heine also pays a mortgage on her property to JP Morgan Chase Bank N.A.  The actions of the City and the State in the closures of these buildings is a violation of the "one to four family rider" that is signed with the mortgage and could trigger acceleration of the Mortgage with yet another property to be foreclosed in the State of New Jersey.

> \* \* \*

> 4.  In the case of Heine and Peri-Okonny the lender is JPMorgan Chase Bank, N.A.  The bank is not a participant in the interaction with the town so they are not aware of the related problems until the home falls into foreclosure.  At that time the bank has lost principle, interest, and tax payments.  The degraded quality of the property makes financial recovery difficult.  The bank is not always equipped with programs that allow for help to such a distressed homeowner.

(Compl. Count I ¶ 6; Count IV ¶ 4).

Even under a liberal reading, the Complaint does not articulate a cause of action against Chase.  Frankly, it is not even clear that Plaintiffs intend to state a cause of action against Chase.

Only two of the twenty-one Plaintiffs have any sort of relationship with Chase: Heine and Peri-Okonny.[24]  At most, Chase has only a tangential connection to the issues raised in the litigation. In fact, the reference to the foreclosure judgment is the only sentence that indicates any action taken by Chase.  (Compl. Count I ¶ 6).  The other references to Chase merely indicate that Chase holds mortgages on properties connected to Plaintiffs' allegations against the other Defendants.

Portions of the Complaint suggest that Plaintiffs' true intent behind naming Chase as a defendant was for notice purposes, because it was "not aware of the related problems until the home falls into foreclosure."  (Compl. Count IV ¶ 4).  And Plaintiffs' opposition does not dispel this inference.  Chase is mentioned only once in Plaintiffs' opposition:

> The Joinder of Parties including JP Morgan Chase Bank N.A. is necessary so that relief will include all parties to the controversy. As a lender for several of the properties in this litigation, issues of violations of the one to four family rider, allegations of change of use, insurance for vacant properties, property value when the dwelling is removed or its use is removed, and government

---

[24]    On April 6, 2010, Chase initiated a successful foreclosure action against Peri-Okonny in the Superior Court of New Jersey, Chancery Division.  (*See* D.E. No. 56-1, Chase Mov. Br. Ex A).  To the extent that Peri-Okonny asserts any allegations against Chase relating to the foreclosure, the Court finds that such allegations are barred by the *Rooker-Feldman* doctrine.

Under *Rooker-Feldman*, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). The Third Circuit has established a four-part test that must be met for the *Rooker-Feldman* doctrine to apply:

> (1) the federal plaintiff lost in state court; (2) the plaintiff "complains of injuries caused by the state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Id.* at 166.

Here, any allegations against Chase relating to the foreclosure of Peri-Okonny fall squarely within the established criteria under *Rooker-Feldman* and must be dismissed.  *First*, Peri-Okonny lost in state court when the Superior Court of New Jersey, Chancery Division, entered a final judgment against her on May 20, 2015.  (*See* D.E. No. 56-1, Chase Mov. Br. Ex. C).  *Second*, to the extent that the allegations in the Complaint imply that the foreclosure judgment amount should be reduced because it "includes several years of tax payments for the building even after the City demolished it," those injuries are caused by the state court judgment.  *Third*, the state court judgment, issued on May 20, 2015, was rendered six months before this suit was filed.  (*Id.*).  *Finally*, a liberal reading of the Complaint (to the extent that a claim can be gleaned from the allegations) suggests that Peri-Okonny is inviting this Court to either reduce or otherwise vacate the foreclosure judgment against her.  Peri-Okonny's claims against Chase relating to the foreclosure of her home meet the Third Circuit's four-part test and are therefore barred by the *Rooker-Feldman* doctrine.  These claims are thus dismissed *with prejudice*.

> regulated services such as tarp [sic] funds for modifications are
> relevant to the resolution of the issues.

(Pls. Opp. Br. at 13).

Rather than addressing the defects of the Complaint raised by Defendants, Plaintiffs' opposition says nothing more than Chase is a necessary party.[25]   It neither articulates a cause of action nor seeks any relief against Chase.  Accordingly, Plaintiffs have failed to satisfy the pleading requirements of Rule 8.  *See Franklin*, 523 F. App'x at 172-73 (holding that *pro se* litigants are not relieved of the obligation to plead enough factual matter to meet Rule 8's requirements); *Pushkin*, 2013 WL 1792501, at *4 (holding that *pro se* status does not relieve a litigant of the obligation to "clearly and specifically" identify which claims pertain to which defendants).  The Court therefore dismisses all claims against Chase.  *See Eisenstein v. Ebsworth*, 148 F. App'x 75, 77 (3d Cir. 2005) (affirming district court's dismissal because the "complaint was incomprehensible and failed to succinctly set forth the factual basis for the claims and the legal cause of action on which the claims were based").

### D.  Alternative Grounds for Dismissal and Futility Analysis

The Court finds that alternative grounds (combined with the protracted history surrounding this matter) warrant dismissing Plaintiffs' entire Complaint *with prejudice*.  And despite holding the *pro se* Complaint to less stringent standards, *see Erickson*, 511 U.S. at 94, the Court will not grant Plaintiffs leave to amend because any future amendment would be futile.  *See Estate of*

---

[25]   A necessary party is one in whose "absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).  The Court finds that Chase is not a necessary party with regard to the alleged violation of the "one to four family rider," as the Complaint alleges that it is the other Defendants who violated the rider, rather than Chase.  (*See* Compl. Count I ¶ 6 ("The actions of the City and the State in the closures of these buildings is a violation of the 'one to four family rider' . . . .")).  As for the remaining items cited in the Plaintiffs' opposition (such as insurance and property values), none of these items constitute a cause of action against Chase.  Indeed, the Complaint states that "[t]he bank is not a participant in the interaction with the town so they are not aware of the related problems until the home falls into foreclosure.  At that time the bank has lost principle, interest, and tax payments."  (Compl. Count IV ¶ 4).

*Fabics*, 674 F. App'x at 210 (citing *Great W. Mining & Mineral Co.*, 615 F.3d at 175 ("[T]here is [no abuse of discretion] where pleading deficiencies would not have been remedied by proposed amendments.")).  The Third Circuit's reasoning in the 6025 Action is instructive to this Court's analysis.

       ***Failure to Allege a Specific Municipal Custom or Policy.***  The Third Circuit explained that "[w]here, as here, a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Id.* (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).  "And to state a viable claim in this context, [Plaintiffs] must not only identify a municipal custom or policy that caused their injury, but also specify what exactly that custom or policy was." *Id.* (citing *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009)).

       Here, Plaintiffs' claims "against the Defendants arise from their violation of . . . 42 USC §1983 . . . ."  (Compl. at 3).  They allege that the "[m]unicipalities have passed Ordinances that are unconstitutional or are unconstitutionally enforced."  (Compl. Count IX ¶ 8).  In their brief, they state that the "occurrances [sic] may take place in different municipalities but they illustrate the same issues and are part of the same flawed inspection and enforcement practices in the State of New Jersey."  (Pls. Opp. Br. at 1).  Though their Complaint and opposition reference unconstitutional enforcement practices, neither identifies any *particular* official municipal custom or policy to which their alleged harms might plausibly be traced.  *See Estate of Fabics*, 674 F. App'x at 210 (noting same issue in 6025 Action).  The Complaint is similarly defective as to the DCA because it fails to identify any particular instance of conduct to which the alleged

constitutional harms might be traced.[26]  *See id.* (noting same issue in 6025 Action); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs.").

In failing to trace the alleged constitutional violations to an official custom or policy of any municipality or to ascertainable conduct of the DCA, Plaintiffs also fail to state a claim against these Defendants under Rule 12(b)(6) and their claims must be dismissed.  *See Estate of Fabics*, 674 F. App'x at 211 (citing *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) ("Because McGovern's complaint fails to allege that the City's employees acted pursuant to an official policy or custom, the District Court properly dismissed his claim.")).  And because the Complaint fails to provide sufficient factual basis for claims under § 1983—despite repeated Court warnings and opportunities to cure this deficiency—the Court finds that amendment would be futile.

***Generalized Grievances.***   Plaintiffs' Complaint "ask[s] the Court to enforce the International Universal Declaration of Human Rights" through certain declaratory relief.  (Compl. Count II ¶ 4).  Plaintiffs feel that the various municipalities of New Jersey named in this action, as well as the State itself, have enacted various ordinances or policies that violate the federal and state Constitutions, rights established by case law, and the "international concept of 'Habitat.'"[27]

---

[26]        Similar to the 6025 Action, the Complaint here contains no specific allegations against the DCA.  (*See generally* Compl.).  Plaintiffs' opposition, however, suggests that the DCA delegates enforcement of certain fire-safety codes "to local governments subject to the control and supervision of the Department Commissioner."  (Pls. Opp. Br. at 13).  To the extent that Plaintiffs' opposition raises new allegations against the DCA, the Court reminds Plaintiffs that "respondeat superior is not available in § 1983 actions."  *Estate of Fabics*, 674 F. App'x at 211 n.9 (citing *Iqbal*, 556 U.S. at 676).

[27]        (*See, e.g.*, Compl. at 3 ("This Court has jurisdiction over this action because the claims we make against the Defendants arise from their violation of Federal Law, specifically, . . . Title 42 USC §1983 . . . the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution . . . violations of the Constitutional rights of individuals which are well established by case law from United States Courts . . .  violations of the State Constitution as well as the substantive rights of residents.  The Plaintiffs raise claims regarding the interntional [sic] concept of 'Habitat' . . . .")).

(Compl. at 3).  Indeed, Plaintiffs' opposition states that "[i]njunctive relief is needed against the enforcements of the municipalities that are not compliant with the guidance of case law or the Constitutional rights of residents."  (Pls. Opp. Br. at 8).  And they seek, time and again, "[d]eclarative relief for the issues raised to establish future practices and enforcement policies for the municipalities that are the subject of the Complaint."  (Compl. at 9, 11-14, 16, 18-19, 21).

Such complaints, however, do not establish the kind of particularized injury necessary for Article III standing.  This Court lacks jurisdiction over these types of "generalized grievance[s] shared in substantially equally measure by all or a large class of citizens."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  "A citizen cannot seek judicial relief simply to vindicate a belief in the need for better, or even lawful, conduct by the government or public officials."  *Fabics*, 2015 WL 5167153, at *6.  It is well established that "Article III requirements of standing are not satisfied by the abstract injury in nonobservance of the Constitution asserted by citizens."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 482-83 (1982).  Likewise, standing cannot be "predicated on the right, possessed by every citizen, to require that the Government be administered according to law," because "[s]uch claims amount to little more than attempts to employ a federal court as a forum in which to air . . . generalized grievances about the conduct of government."  *Id.*

Accordingly, to the extent that Plaintiffs' Complaint relies upon a mutual feeling of discontent about the perceived unconstitutionality of certain municipal ordinances and the actions or inactions of the municipal and state government, Plaintiffs lack standing to air such grievances.  This, too, suggests that a future amendment would be futile.  *Cf. Fabics*, 2015 WL 5167153, at *6 (denying plaintiffs' motion to amend because it relies on generalized grievances).

*Rule 20 Joinder.*   The instant Complaint also fails to rectify the Rule 20 problem identified repeatedly by other courts.[28]   Plaintiffs assert that "[t]here is a question of law that is common to all plaintiffs and has its origins in the international ECOSOC Coalition Treaty." (Compl. Count II ¶ 2). Plaintiffs appear to assert that they are properly joined by way of their general goals of having the State of New Jersey and its municipalities enforce their housing ordinances in a constitutional manner. As discussed, Plaintiffs lack standing to bring such a suit.

Moreover, the Court agrees with Judge Thomson's analysis, affirmed by the Third Circuit, regarding substantially similar allegations in the 6025 Action:

> Insomuch as Plaintiffs desire to bring individualized claims alleging improper enforcement of a municipality's municipal code, these claims fail to meet Rule 20's requirements demanding that the claims arise out of the same transaction or occurrence *and* involve a question of common law or fact common to all plaintiffs. Contrary to Plaintiffs' assertions, the Court may not simply join together distinct injuries committed by different defendants to different plaintiffs under different ordinances, even if there may be a common "theme" of unfairness in the eyes of the plaintiffs. The purpose of Rule 20 is to promote economies of litigation, a purpose which is not served here where Plaintiffs' claims do not arise out of "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). Rather, this action would inevitably break down into a series of mini-complaints, where each individual defendant would be defending against an individual plaintiff for an alleged wrong. This would be an immense waste of judicial resources and is completely antithetical to the purposes of Rule 20.

*Fabics*, 2015 WL 5167153, at *8. Plaintiffs' unwillingness or inability to cure yet another deficiency—despite repeated Court warnings and opportunities to cure—further suggests that granting Plaintiffs leave to amend would be futile.

---

[28]      *See Fabics*, 2015 WL 5167153, at *8 (noting that plaintiffs' claims fail to meet Rule 20's requirements); *Fabics*, 629 F. App'x at 199 n.6 ("Although it appears that the District Court also could have dismissed the complaint for a variety of other reasons, including . . . because parties and claims were improperly joined pursuant to [Rule 20] . . . .").

Indeed, as the Third Circuit noted, "[t]he District Court provided [ten of the Plaintiffs] several opportunities to amend their complaint to conform with the Federal Rules of Civil Procedure, but instead of amending their complaint in any meaningful way to address the deficiencies, [these Plaintiffs] repeatedly filed substantially similar versions of the original, deficient complaint." *Estate of Fabics*, 674 F. App'x at 209.  Like in the 6025 Action, "it appears that we are confronted with a situation where it is not possible to amend the complaint in any relevant respect." *Id.*   For these reasons, the Court finds that the Complaint must be dismissed in its entirety *with prejudice.*

## IV.   CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Complaint.   The Complaint is dismissed *with prejudice.*   An appropriate Order accompanies this Opinion.[29]

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[29]     The Court notes that Defendants DYFS, North Brunswick, South Brunswick, Garfield, and Highland Park have not answered or moved to dismiss the Complaint.  Indeed, it is unclear whether these Defendants have been served.  In any event, because dismissal here is based on the Complaint's non-compliance with Rule 12(b)(6), dismissal of the entire action against all Defendants is nevertheless warranted.  *See Estate of Fabics*, 674 F. App'x at 211 (holding that "dismissal of the entire action was warranted regardless of who had answered or moved to dismiss the complaint" where the complaint fails to comply with Rule 12(b)(6)); *Roman v. Jeffes*, 904 F.2d 192, 196 (3d Cir. 1990) ("[A] court may sua sponte raise the issue of the deficiency of a pleading under Rule 12(b)(6) provided that the litigant has the opportunity to address the issue either orally or in writing.").